AUGUSTA MIDDEKE, Admx. *et al.*

*v.*

ROSE BALDER *et al.*

*Opinion filed October 25, 1902.*

1. DESCENT—*rule where two or more persons perish in a common disaster.* When two or more persons perish in a common disaster, there is at common law no presumption of survivorship, and if survivorship is claimed it must be proved, and the party having the burden of proof must fail if the proof cannot be made.

2. SAME—*effect of the rule requiring party to prove survivorship.* The effect of the rule requiring proof of survivorship where two or more persons perish in a common disaster is, that the parties are treated as having all died at the same instant, and that no one takes anything from any of the others by reason of such other's death.

3. BENEFIT SOCIETIES—*beneficiary holds no vested interest.* In Illinois, the beneficiary named in the certificate of a benefit society holds no vested interest in the fund, the same being under the control of the member procuring the certificate.

4. SAME—*effect where insured and beneficiary die in same disaster.* Where a benefit certificate provides that the benefits shall be paid to the heirs of the deceased member in case the named beneficiary dies before the insured, if both the insured and the beneficiary perish in the same disaster the heirs or representatives of the ·beneficiary have the burden of proving that the beneficiary became entitled to the benefit fund by reason of her surviving the insured, and if they cannot make such proof the benefits will go to the heirs of the deceased member.

*Middeke* v. *Balder,* 98 Ill. App. 525, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. CHARLES G. NEELY, Judge, presiding.

This was a bill of interpleader by the National Union, a fraternal beneficiary association, bringing into court the parties to this appeal for the purpose of having their conflicting claims to the benefit which became payable on the death of F. H. Marty, settled. Marty held a benefit certificate, in which the association promised to pay

to his wife, Agnes Marty, $2000 upon the death of the member in good standing. Marty, his wife and infant child were burned to death in the same fire which consumed their home in Chicago, February 14, 1899. The laws of the association provided that "in the event of the death of all the beneficiaries selected by the member before the decease of such member, if no other or further disposition thereof be made, the benefit shall be paid to the heirs of the deceased member." Marty left him surviving his sisters, Rose Balder and Bertha Marty, appellees, who claimed the fund. The wife, Agnes Marty, left her surviving her father and mother and four brothers and two sisters. Augusta Middeke was appointed administratrix of her estate by the probate court and is the appellant here, (together with the other surviving members of the family,) and also claims the fund.

It was admitted on the hearing that there was no proof whatever as to which one of the three, husband, wife or child, survived the others. The court decreed the fund to appellant, the administratrix of the wife, which decree was, on appeal to the Appellate Court, reversed and the cause remanded. The circuit court then re-docketed the case and entered a decree in favor of appellees, the two sisters of the member, from which decree appellants appealed to the Appellate Court, where the decree was affirmed, and appellants then took this their further appeal to this court.

GEORGE F. ORT, (SAMUEL J. HOWE, of counsel,) for appellants:

Agnes Marty was a beneficiary competent to take under the certificate, being the wife and a member of the insured's family, and her right to take under the certificate could only be divested by (a) the failure of the insured to maintain his membership in good standing; (b) by the insured naming a new beneficiary, competent to take; (c) by the death of the beneficiary before the death

of the member. *Cowman* v. *Rogers*, 73 Md. 403; *Paden* v. *Briscoe*, 81 Tex. 563; *Fuller* v. *Linzee*, 135 Mass. 468; Niblack on Accident Ins. and Ben. Societies, 205.

The bill of interpleader alleges that the certificate issued to F. H. Marty was in force at the time of his death and concedes that Agnes Marty remained the beneficiary therein, and the answer of appellees admits such allegations. It was therefore incumbent on appellees to aver and prove that Agnes Marty died before F. H. Marty. *Cowman* v. *Rogers*, 73 Md. 403; *Paden* v. *Briscoe*, 81 Tex. 563; *Fuller* v. *Linzee*, 135 Mass. 468; Niblack on Accident Ins. and Ben. Societies, 205.

The rights of Agnes Marty to the fund could under no circumstances be said to be as heir of F. H. Marty. Her rights were, by virtue of a direct contract with the National Union, evidenced by the certificate in which she was named as beneficiary. *Benefit Society* v. *Clendenin*, 44 Md. 434; *Rogers* v. *Humphrey*, 4 A. & E. 299; 2 Washburn on Real Prop. 320; 1 Chance on Powers, 1; 1 Sugden on Powers, (ed. 1856,) 242; 2 id. 22; *Bradish* v. *Gibbs*, 3 Johns. Ch. 523; *Doolittle* v. *Lewis*, 7 id. 45; *Burleigh* v. *Clough*, 52 N. H. 267; *Cowman* v. *Rogers*, 73 Md. 403.

Before the appellees can recover the fund, it is incumbent on them to show conclusively that Agnes Marty pre-deceased her husband. If she survived him for an appreciable instant of time, then clearly the fund was hers and passed to her personal representative. The claim of the appellant administratrix to the fund is not by descent or assignment or independent title, but merely as representative of the person of her intestate, Agnes Marty, beneficiary, in respect of her personal estate, and her appointment and derivative title relate back to the moment of Agnes Marty's death, and she "succeeds to the legal title to the personal estate, and the title takes effect by relation from the death of her intestate." *Makepeace* v. *Moore*, 5 Gilm. 476; Toller on Law of Executors, 133; Coke's Litt. 289.

THOMAS H. JOYCE, DENT & WHITMAN, and W. O. LIND-. LEY, for appellees:

Under the laws of the National Union itself, the beneficiary, in order to take, must be in existence and capable of taking at death of the insured. This requirement formed a part of the contract between the insured and the National Union. *Paden* v. *Briscoe*, 81 Tex. 563; *Fuller* v. *Linzee*, 135 Mass. 468; *Aid Society* v. *Lewis*, 9 Mo. App. 412; Niblack on Accident Ins. and Ben. Societies, secs. 202-207; *Masonic Relief Ass.* v. *McAuley*, 13 Mackey, 70; *Supreme Council* v. *Adams*, 44 Atl. Rep. 380; 2 Bacon on Ben. Societies and Life Ins. secs. 243a, 396a.

Agnes Marty never had any vested right in this benefit fund, so that, whoever might be ultimately entitled thereto, nothing ever descended to her representatives, for the reason that she never enjoyed more than a mere expectancy as to such benefit fund. A mere expectancy cannot descend. *Johnson* v. *Merithew*, 80 Me. 111; *Will of Ehle*, 73 Wis. 445; *Newell* v. *Nichols*, 75 N. Y. 78; *Benton* v. *Brotherhood of Railroad Brakemen*, 146 Ill. 570; *Benefit Ass.* v. *Rolfe*, 76 Mich. 146; *Fisher* v. *Donovan*, 77 N. W. Rep. 778; *Voigt* v. *Kersten*, 164 Ill. 314; *Fisher* v. *Legion of Honor*, 168 Pa. St. 279; *Delaney* v. *Delaney*, 70 Ill. App. 130.

In order that any interest may vest in the legal representatives or heirs of Agnes Marty, it is clear that some inheritable interest or right must have vested in Agnes Marty herself. There never was an instant of time during which a right or title of any kind, as distinguished from a mere expectancy, vested in her. No survivorship by her is shown. Without showing such survivorship, the administratrix of Agnes Marty can take nothing, for there is nothing that any legal representative can take. While the law does not presume that all did in fact die at the same instant of time, yet property rights must be settled on that theory. *Johnson* v. *Merithew*, 80 Me. 111; *Newell* v. *Nichols*, 75 N. Y. 78.

198—38

Until after the death of the member the beneficiary acquires no vested right to the fund named in the certificate. *Benton* v. *Brotherhood of Railroad Brakemen*, 146 Ill. 570; *Fisher* v. *Donovan*, 77 N. W. Rep. 778; *Voigt* v. *Kersten*, 164 Ill. 314; *Delaney* v. *Delaney*, 70 Ill. App. 130.

Mr. JUSTICE CARTER delivered the opinion of the court:

When two or more persons lose their lives in a common disaster, by the civil law a number of presumptions of survivorship arise, based on age, sex and condition of health, but there is no presumption that they all died simultaneously. At common law there is no presumption of survivorship, and if survivorship is claimed it must be proved, and the one having the burden of proof of such survivorship must fail if he cannot prove it. While there is no such presumption, the practical result of this rule is that the parties are treated as having all died at the same instant of time, and that no one of those thus dying synchronously takes from any of the others dying in the common disaster, by reason of the other's death. This rule was practically settled in England in 1855 in the leading case of *Underwood* v. *Wing*, 4 DeG., M. & G. 633, heard on appeal from the Master of the Rolls. (*Underwood* v. *Wing*, 19 Beav. 459.) All the previous cases and authorities were cited and the subject was thoroughly discussed. Underwood, his wife and three children all perished at sea on the voyage from London to Australia. The Lord Chancellor said: "The question in the present case is, whether, the plaintiff [one Underwood] being the next of kin or representing the next of kin, Mr. Wing shows a title depriving her of that to which, in the absence of a valid will, she is entitled. That depends, first of all, on the terms of the will, and the will gives the property to Mr. Wing 'in case my wife shall die in my lifetime.' Then comes the question, on whom does the burden of proof rest to show whether the wife did or did not die in the testator's lifetime? I think, the principle

once being admitted that the *prima facie* title is in the next of kin, that it must rest on the person who claims the property under a bequest giving it to him in that particular event.   It is not for the next of kin to show that the wife did not die in her husband's lifetime, but the person who claims under the disposition must show, not that probably it might be one way or the other, but that that state of circumstances did in fact occur which entitles him, according to the language of the will, to say that the wife did die in her husband's lifetime.   *   *   * The result therefore is that, there being a will giving away the property in one state of circumstances (namely, that the wife die in the husband's lifetime,) and it not being proved that that state of circumstances existed, the property is not given away at all, and must be distributed among the next of kin as upon an intestacy." And it was also said that there being no proof as to which one, husband or wife, survived the other, "the property must be distributed just as it would have been if they had both died at the same moment."   The case went to the House of Lords as *Wing* v. *Angrave*, 8 H. L. Cas. 183, and the same rules as to survivorship and burden of proof were there announced.

This subject has been considered by a number of our American courts, and all are agreed that there is no presumption of survivorship and that survivorship must be proved.   In considering the question upon which the decision of the case at bar must turn, a review of the principal cases may not be unprofitable.

In *Coye* v. *Leach*, 8 Metc. 371, (41 Am. Dec. 523,) the father, his only daughter, her husband and their only child, perished at sea on a voyage from Charleston to Baltimore.   The contest was between the heirs of the daughter and the heirs of the father.   Speaking of the question of survivorship as between the father and the daughter, the court said: "For aught that appears in the present aspect of the case they may both have per-

ished together. This being so, and no arbitrary presumption being authorized by law in such cases, arising from age or sex, the consequence is that those who seek to enforce their rights as heirs-at-law of Caroline E. Coye [the daughter] must fail in establishing their right to a distributive share in the estate of Sylvanus Keith," the father.

In the case of *Newell* v. *Nichols*, 75 N. Y. 78, there was a will devising property to trustees on certain trusts for the benefit of the husband and two children of testatrix for life, and in the event of their death without further disposition of the property, to certain named relatives of the wife. The husband of the testatrix, her mother and her two children were all lost on a voyage from New York to Europe, in 1875. The contention was between the heirs of the children and the relatives of the testatrix named in the will. The doctrine of the English court in the *Underwood case* was approved, and it was held that the persons who claim through a survivorship must prove the same. After quoting some expressions in the older English cases the court said: "These expressions only mean that as the fact [of survivorship] is incapable of proof, the one upon whom the *onus* lies fails, and persons thus perishing must be deemed to have died at the same time, for the purpose of disposing of their property."

In *Johnson* v. *Merrithew*, 80 Me. 111, A. W. Nickerson, his wife and his three children sailed from Scotland for Havana and were never heard from again. His mother had died some years before, leaving him and his two sisters as her only heirs-at-law. The contest was between the grantee of the father and the two sisters. The court said: "In the absence of evidence from which the contrary may be inferred, all may be considered to have perished at the same moment,—not because the fact is presumed, but because from failure to prove the contrary by those asserting it, property rights must necessarily be settled on that theory. *. * * The children are not

proved to have survived their father, and therefore he died without issue and his share descended to his father," —citing the three cases quoted above.

In *Russell* v. *Hallett*, 23 Kan. 276, the court said, citing with approval *Coye* v. *Leach, supra,* and *Newell* v. *Nichols, supra:* "In the absence of other evidence, the fact as to who was the survivor where several persons perish in the same catastrophe is assumed to be unascertainable, and property rights are disposed of as if death occurred to all at the same time. While, therefore, it is correct to say the law makes no presumption on the subject, the practical consequence is nearly the same as if the law presumed all to have perished at the same moment."

In *In re Ehle's Estate*, 73 Wis. 445, Abram Ehle, his son James, the son's wife and their three children all perished in the same fire. The court found, from the evidence, that Abram died first, then his son James, and lastly, the wife and children. In speaking of the question of survivorship the court said: "In the absence of any such evidence the question of such survivorship must necessarily be regarded as unascertainable, and hence in such case the rights of property must be determined as if death occurred to all at the same moment of time."

In the case of *Petition of Willbor*, 20 R. I. 126, the three Willbor sisters were burned to death at the same time in their house at Newport. Each one left a will leaving her property to the others. The court said: "As all three of the testatrices lost their lives in the same disaster, and no fact or circumstance appears from which it can be inferred that either survived the others, the question of survivorship must be regarded as unascertainable, and hence the rights of succession to their estates are to be determined as if death occurred to all at the same moment." (51 L. R. A. 863, and note.)

There are also several cases involving the right to the proceeds of a policy of insurance upon the life of the husband for the benefit of the wife, where both perished

in the same disaster, and the contest was between the administrator of the wife's estate and those claiming through the husband, or as substituted beneficiaries. The same rules have been adhered to as in the foregoing cases, and the question as to what party has the burden of proof has been determined by the doctrine of each particular court, whether the beneficiary took a vested or a contingent interest in the fund.

In *Fuller* v. *Linzee*, 135 Mass. 468, the contest was between the next of kin of Mrs. Fuller and the administrator of her husband, who also represented his next of kin. N. G. Fuller, his wife and their five children sailed from Calcutta for New York and all perished together at sea. Fuller's life was insured, the insurance payable to his wife, and if she pre-deceased him, then it was payable to their children. The court construed the insurance contract as giving to the wife an interest contingent upon her surviving her husband, and said: "This is a proceeding to establish a right in the wife which would descend upon her next of kin, and the burden of proof is upon the party who undertakes to establish it. We think, upon the view of the contract already taken, that the wife had no interest transmissible to the next of kin unless she survived her husband, and that they cannot maintain this claim without proof that she survived him." A different view has been taken where it is held that the beneficiary in the policy has a vested interest in it.

The case of *Paden* v. *Briscoe*, 81 Tex. 563, was a suit upon a benefit certificate issued by the Supreme Lodge Knights and Ladies of Honor to John F. Briscoe, payable to his wife on his death. The by-laws provided that if the beneficiary should die before the member, the proceeds of the certificate should be paid to the dependent heirs of the deceased. Both husband and wife perished in a fire which consumed the hotel in which they were stopping. The trial court found that both died at the same instant of time, and gave judgment for the mother

and sister of the deceased, dependents upon him for support, and against the administrator of the estate of the wife.   On a review of the case the Supreme Court said: "The court below finds that the wife, the beneficiary named by the husband, did not die before her husband, but died at the same instant.   The result of this finding is that the beneficiary named, at the time the policy was earned by the death of the husband, did not survive him and was incapable of taking the proceeds of the policy. *  *  *  The instantaneous death of both husband and wife as successfully accomplished the inability of the wife to take as if she had died before."

In *Hildebrandt* v. *Ames*, 66 S. W. Rep. 128, which was a suit on an insurance policy, both husband and wife being drowned in the Galveston disaster, the court of civil appeals of Texas said: "There being no presumption either of survivorship or of simultaneous death, and no evidence in the case to sustain a finding of either of these facts, it is manifest that the party upon whom lay the burden to establish such survivorship or simultaneous death has failed to make out his case, and the only question for us to determine is upon which of the parties to this suit such burden was imposed.   The determination of this question is not affected by the position of the parties as plaintiff or defendant in the court below."   After an extended discussion the court tound that the beneficiary had no vested interest in the policy, and held "that it devolved upon her [the beneficiary's] representatives to show that the contingency had happened which would entitle her to receive the proceeds of the policy."

In the recent case of *United States Casualty Co.* v. *Kacer*, 69 S. W. Rep. 370, Yocum and his daughter perished by the destruction of their yacht on a trip in the Gulf of Mexico.   Yocum carried two accident insurance policies payable to his daughter, if surviving; if not, to his legal representatives.   In discussing the case the court fully approved of the rules regarding survivorship and burden

of proof as stated in the cases, and said: "The rule is, that he who claims a right by virtue of survivorship must prove the fact of the survival of him through whom he claims, and that, failing in this, the property or fund remains vested as it was before the calamity. * * * But this does not settle the case, because the representatives of the father and daughter each claim that the rights of the other depend upon their showing which of the two survived the other, and hence each claims the burden of proof is upon the other. The representative of the father further claims that if neither can prove what the fact in this regard was, then the doctrine of 'distribution' applies, and the fund must go where it would have gone if there had been no appointed beneficiary in the policy, to-wit, to the representatives of the assured." The court held that an insurance policy of the kind sued on, conferred a vested interest in the beneficiary, and hence gave judgment for the administrator of the daughter's estate.

A different view of the question was taken in *Cowman* v. *Rogers*, 73 Md. 406. In that case Walter E. Hoopes, his wife and two children were all drowned in the Johnstown disaster, in Pennsylvania, in 1889. He was insured in the Order of the Golden Chain, and the certificate was payable, upon his death, to his wife. A sister of the deceased and the administrator of the wife both claimed the fund. The court said: "Mrs. Hoopes was the beneficiary named in the certificate. Her representative has a *prima facie* title to the funds. That title can only be divested by evidence showing that she died before her husband. They are both dead and both died in the same disaster. There is no proof, and there is no legal presumption, as to which one died first or as to their having died simultaneously. Until it is shown that she died before her husband the fund is payable to no one else other than her representative, because it is only in the event of the death of the nominated beneficiary in the lifetime of the assured that others can possibly take. Until proof

of her having so died is first furnished, her *prima facie* title cannot be displaced."

Just what the court meant by the expression "*prima facie* title" is not clear.   If the court meant to say that the beneficiary of a certificate in these fraternal beneficiary associations has a vested interest, such is not the commonly accepted view and is not the law of this State. (*Martin* v. *Stubbings*, 126 Ill. 387; *Benton* v. *Brotherhood of Railroad Brakemen*, 146 id. 570; *Voigt* v. *Kersten*, 164 id. 314.)   In cases of ordinary property no one has a vested interest in it during the lifetime of the absolute owner, but has only an expectancy, dependent upon the death of the owner during the life of the expectant, and upon the further contingency that the owner does not dispose of the property by deed, gift or will made before his death.   The case of a beneficiary in a certificate of a fraternal beneficiary association is analogous.   The member of the beneficiary association procuring the beneficiary certificate is the moving party through whose action the beneficial scheme of the association is put in operation for the benefit of the nominated beneficiary, and it is under the control of the member, at least to such an extent that he can defeat the expectancy of the beneficiary and secure the benefit of the scheme to some other eligible beneficiary.   The object of the insured is to provide for the support of those dependent on or related to him, usually by the ties of consanguinity.   Such dependents and relations are the ones entitled to the benefit of the insurance, and the burden of proof rests upon the heirs of the beneficiary,—upon those claiming the benefits of the joint action of the insured and the beneficiary association, through the nominated beneficiary,—that such beneficiary actually became entitled to such benefit by surviving the insured, and if they cannot do this the benefits will accrue to the succeeding surviving beneficiaries, as may be provided in the scheme of the association, or to the next of kin of the deceased member.   In

the case at bar the laws of the association provided that the benefit should, in case of the death of the beneficiary before the insured, be paid to the heirs of such insured member. These are the appellees, Rose Balder and Bertha Marty. Treating the case as if the member and the beneficiary died at the same time, the result is the same as if the beneficiary died first.

It is contended by appellants that there is no proof appellees are the only heirs of F. H. Marty. Such heirship was alleged in the bill of interpleader and claimed in the answer of appellees, but was denied in the answer of appellants. The circuit court, in the decree, found that appellees were the only heirs-at-law of the deceased member, and we are of the opinion that this finding is supported by the certificate of evidence.

The judgment of the Appellate Court must be affirmed.

*Judgment affirmed.*